# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Marvin Aspen | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 8888 | **DATE** | 6/6/2003 |
| **CASE TITLE** | Richard K. Rodgers vs. Warden Jerry Sternes | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due _____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order: Rodgers' petition for writ of habeas corpus is denied. Rodgers' motion to strike (12-1) respondent's reply is granted.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | **Document Number** |
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | JUN 10 2003 | | |
| | Notified counsel by telephone. | date docketed | | 13 |
| | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 6/6/2003 | |
| GI. | courtroom deputy's initials | 03 JUN -9 AM 8: 50 | date mailed notice | |
| | | central Clerk's Office | GL | |
| | | | mailing deputy initials | |

| | |
|---|---|
| RICHARD K. RODGERS, | ) |
| | ) |
| Petitioner, | ) |
| v. | ) Case No. 02 C 8888 |
| | ) |
| WARDEN JERRY STERNES, | ) |
| | ) |
| Respondent. | ) |

**DOCKETED**

JUN 1 0 2003

## MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, District Judge:

Petitioner, Richard K. Rodgers, is currently incarcerated at the Dixon Correctional Center in

Dixon, Illinois, where he is in the custody of Respondent Warden Jerry Sternes. Currently before us is

Rodgers' petition for writ of habeas corpus.[1] For the following reasons, we deny Rodgers' petition.

## I. BACKGROUND[2]

Richard K. Rodgers was convicted of first degree murder and home invasion following a jury

trial in January 1992. His conviction and 45-year sentence of imprisonment were affirmed on direct

appeal. Rodgers filed a petition for post-conviction relief on September 9, 1996. Rodgers' amended

petition alleged that his trial counsel was ineffective for failing to request a fitness hearing in January

1992. He further alleged that his appellate counsel was ineffective for failing to raise the issue on direct

appeal. In December 2000, the Circuit Court found that Rodgers had been taking psychotropic

medication at the time of his trial and was therefore entitled to a retrospective fitness hearing under 725

ILCS 5/104-21(a). The Circuit Court stated that it was considering Rodgers' ineffective assistance of

---

[1]Also before us is Rodgers' motion to strike Respondent's Reply, which refers to the habeas petition of Eddie Baines, not that of Richard K. Rodgers. We grant Rodgers' motion to strike Respondent's Reply as non-responsive.

[2]The facts contained herein are taken from the parties' filings.

13

counsel claims pursuant to *People v. Mitchell*, 727 N.E.2d 254, 268 (Ill. 2000), which requires the petitioner to prove by a reasonable probability that the he would have been found unfit for trial if a fitness hearing had been held.

Dr. Marvin Schwarz, Rodgers' expert witness, testified that, in his opinion, Rodgers was unfit for trial and sentencing. Dr. Schwarz stated that Rodgers experienced a significant adjustment disorder with features of mixed affect, depression and severe anxiety during his incarceration in the DuPage County Jail. Rodgers' severe anxiety was treated with the anti-anxiety medications Ativan and Buspar, and the anti-depressant Imipramic throughout his incarceration. Although jail records from September 10, 2001 and September 11, 2001 indicate that Rodgers suffered from an altered thought process, crying spells, an inability to control his emotions, and poor concentration, Dr. Schwarz found no records indicating that he was "adequately sufficiently stabilized for trial." On cross-examination, Dr. Schwarz conceded that Rodgers appeared to understand the nature and purpose of the proceeding against him on a cognitive level. However, Dr. Schwarz said that Rodgers' illness affected his judgment, preventing him from appreciating the meaning of the proceedings on a emotional level, responding appropriately, and rationally assisting his counsel. Dr. Schwarz concluded that he still believed Rodgers to have been unfit even though it appeared that he could testify rationally during trial and converse with his attorneys.

Dr. Lyle Rossiter, the State's expert witness, testified that, in his opinion, Rodgers was fit for trial and sentencing. Dr. Rossiter explained that his interviews and review of records indicated that it was "questionable" whether Rodgers suffered from a diagnosable mental disorder at the time of trial in January 1992. Although Rodgers was diagnosed with an adjustment disorder when initially incarcerated in August 1991, tranquilizers and anti-depressants remitted symptoms of the disorder by October 1991. Jail records indicate that Rodgers was "generally stable," and experienced no unexpected fluctuations in his anxiety level after October 1991. The records do not reflect the requisite disruption of thought,

2

potential, concentration, judgment, or memory to indicate that Rodgers was psychotic. Furthermore, the records do not show that Rodgers was delusional or suffering from hallucinations.

During an interview, Rodgers described himself to Dr. Rossiter as having been very emotionally upset, unable to concentrate and focus, unable to comprehend what was going on in his life, mistaking dreams for reality, mistaking reality for dreams, and having suffered from frequent spells of crying during his incarceration in the DuPage County Jail. Dr. Rossiter said that Rodgers' description of his condition was not supported by the jail records, which contain no indication of mental or emotional illness compatible with Rodgers' alleged conditions. The symptoms Rodgers described would have been caused by mental conditions resulting in disorganized behavior and speech, agitation, and confusion that would have been easily observed and documented in jail records. Because of the disparity between Rodgers' description of his condition and his jail treatment records, Dr. Rossiter testified that he believed Rodgers was exaggerating his symptoms to convince Dr. Rossiter that he was in great mental distress and was incapable of cooperating with his attorneys or understanding what was going on in the legal proceedings against him.

Rodgers testified that he was given medication shortly after his arrival at the DuPage County Jail in 1991. After taking the medication, Rodgers stated that he had difficulty separating dreams and reality, but recalled being placed on suicide watch on several occasions. Rodgers further stated that he did not understand his pretrial proceedings and had difficulty concentrating when meeting with lead defense counsel Terry Ekl in jail prior to trial. However, Rodgers admitted that he knew the role of the judge, prosecutors, defense counsel, jury, and witnesses. He was also aware of the nature of the charge against him, the possible penalties, and the defense strategy. Rodgers said that his emotional problems did not prevent him from testifying consistent with the directions of his attorney. Although Rodgers cried

3

uncontrollably and felt a sense of "complete and utter loss" during trial, he felt some sense of relief after the trial.

Defense counsel Ekl and Paul Moreshi testified that they observed nothing in Rodgers' behavior that indicated he was unfit for trial, was unable to understand what was going on, or could not participate in his defense. To the contrary, Ekl stated that on at least five occasions, he and Rodgers discussed the incident giving rise to the charges against him, and on each occasion, Rodgers' version of events was consistent and credible. Ekl further explained that he and Rodgers discussed plea negotiations and options for trial. Ekl believed that Rodgers understood those discussions. Moreshi similarly testified that he had no unusual communication problems with Rodgers, who appeared to understand the defense strategy of self-defense and second-degree murder. Belva Randazzo, a nurse and Rodgers' sister, testified that Rodgers appeared to be "very depressed" before trial, and appeared to smile inappropriately, gaze into space, and to be unkempt during trial. David Kunz, a friend of Rodgers, testified that before trial, Rodgers' behavior was "very unlike" him and that Rodgers was frequently shaking and on the verge of tears.

Robert Huiner, lead prosecutor in Rodgers' case, testified that Rodgers appeared to understand the questions posed to him and answered those questions appropriately during his trial testimony. Huiner averred that Rodgers' testimony was consistent with a defense of second-degree murder. Huiner stated that nothing during the trial led him to believe that Rodgers did not understand what was going on or that he could not cooperate with his attorney. Joseph Solon, who assisted in the prosecution of Rodgers, testified regarding his belief that Rodgers was fit to stand trial. At the conclusion of the fitness hearing, the Circuit Court found that Rodgers he had been fit for trial and sentencing in 1992.[3] As such,

_____

[3]The Circuit Court stated that if the fitness hearing had been held in 1991 or 1992, it would have considered only the evidence provided by the expert witnesses. However, it also considered all of the evidence presented during the hearing. The court drew the same conclusion under each

4

the Circuit Court found that Rodgers failed to prove by a reasonable probability that he would have been found unfit at trial and sentencing if a pretrial fitness hearing had been conducted. Accordingly, the court denied Rodgers' amended post-conviction petition, finding that Rodgers was not prejudiced by his trial counsel's failure to request a hearing or by his appellate counsel's failure to raise the issue on direct appeal.

Rodgers appealed to the Illinois Appellate Court, arguing that the retrospective fitness hearing violated his state and federal due process rights. He also reasserted his ineffective assistance of counsel claims. On June 5, 2002, the Appellate Court affirmed the denial of Rodgers' amended post-conviction petition. *See* Resp. Ex. F, *People v. Rodgers*, No. 2-00-1483. Rodgers thereafter filed a petition for leave to appeal to the Illinois Supreme Court. The petition was denied on October 2, 2002. *See* Resp. Ex. H, *People v. Rodgers*, No. 94319. Rodgers filed his petition for writ of habeas corpus with this Court on December 9, 2002. Rodgers' petition sets forth two arguments. First, Rodgers contends that the retrospective fitness hearing violated his federal due process rights. Second, Rodgers argues that his trial counsel and appellate counsel were ineffective.

## II.  ANALYSIS

### A.  Standard of Review

Section 2254, as amended, empowers a district court to entertain a petition for writ of habeas corpus from a person in custody pursuant to the judgment of a state court on the ground that he is in custody in violation of the Constitution, laws, or treaties of the United States. *See* 28 U.S.C. §2254(a). Habeas relief may be granted if the adjudication of the claim by the state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." *Id.* at §2254(d)(1). Relief may also be granted

_____

scenario – that Rodgers was fit for trial and sentencing in 1992.

where the state court's adjudication of the claim "was based on an unreasonable determination of the facts in light of the evidence presented to the State court proceeding." *Id.* at §2254(d)(2).

To obtain a writ, a "petitioner first must show that the Supreme Court has 'clearly established' the propositions essential to [his] position." *Schaff v. Snyder*, 190 F.3d 513, 522 (7th Cir. 1999). The petitioner "must next show that the state court's decision was either 'contrary to' clearly established Supreme Court case law or, alternatively, was an 'unreasonable application' of Supreme Court case law." *Id.* The "contrary to" standard, as clarified by the United States Supreme Court in *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000), applies if the "state court arrive[d] at a conclusion opposite to that reached by this Court on a question of law" or if the state court decided a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Id.* at 529 U.S. at 405, 120 S.Ct. at 1519. The "unreasonable application" standard has been clarified to include when the state court "identifie[d] the correct governing legal rule from the Court's cases but unreasonably applie[d] it to the facts of the particular state prisoner's case." *Id.* at 529 U.S. 407, 120 S.Ct. at 1520. However, if the state court's decision was "reasonable, that is at least minimally consistent with the facts and circumstances of the case, we shall uphold the state court ruling, even if it [wa]s not well reasoned or fully reasoned, or even if it ha[d] one of several equally plausible outcomes." *Schaff*, 190 F.3d at 522 (internal quotations and internal citations omitted).

Before a court can review a habeas petition on the merits, it must conclude that the petitioner exhausted all available state remedies, and that the petitioner did not procedurally default his claims in state court. *See Moleterno v. Nelson*, 114 F.3d 629, 633-34 (7th Cir. 1997). To avoid procedural default, a state prisoner must fully and fairly present his constitutional claims in state court. *See Wilkinson v. Cowan*, 231 F.3d 347, 350 (7th Cir. 2000). The parties agree that Rodgers exhausted all

state remedies available to him. The parties also agree that Rodgers fully and fairly presented his federal constitutional claims in state court.

## B. Habeas Claims

### 1. *Due Process*

Rodgers contends that the retrospective fitness hearing violated his federal due process rights because it placed the burden on him under *People v. Mitchell*, 727 N.E.2d 254, 268 (Ill. 2000), to prove by a reasonable probability that the he would have been found unfit for trial if a fitness hearing had been held prior to trial. If Rodgers' counsel had requested a fitness hearing before trial in 1992, the State would have had the burden to prove by a preponderance of the evidence that Rodgers was fit to stand trial. *See* 735 ILCS 5/104-21(a). The issue before us is not whether Rodgers should have had to carry the burden of proof at his retrospective fitness hearing. Indeed, a fitness hearing "is not an end in itself." *Eddmonds v. Peters*, 93 F.3d 1307, 1316 (7th Cir. 1996). Instead, the issue before us is whether Rodgers was fit to stand trial. *See id.* at 1317.

A criminal defendant has a due process right not be tried if he is unable to assist in his own defense. *See Godinez v. Moran*, 509 U.S. 389, 396, 113 S.Ct. 2680, 2685, 125 L.Ed.2d 321 (1993). A defendant is competent to stand trial if he "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding – and whether he has a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960) (per curiam). Post-trial challenges regarding a defendant's fitness for trial "should be based on evidence of [his] irrational behavior, his demeanor at trial, and any prior medical opinion." *United States ex rel. Foster v. DeRobertis*, 741 F.2d 1007, 1011 (7th Cir. 1984). The defendant must present facts "sufficient to positively, unequivocally and clearly generate a real, substantial and legitimate doubt as to [his] mental capacity to meaningfully participate and cooperate with counsel

7

during his trial." *Balfour v. Haws*, 892 F.2d 556, 562 (7th Cir. 1989). In reviewing a state trial court's finding of fitness in the context of a habeas corpus petition, we presume the trial court's ruling to be correct. *See Maggio v. Fulford*, 462 U.S. 111, 116-118, 103 S.Ct. 2261, 2263-65, 76 L.Ed.2d 794 (1983) (per curiam).

In this case, the Circuit Court, in a retrospective fitness hearing, found Rodgers fit to stand trial. We agree with the trial court's finding. Dr. Rossiter, the State's expert witness, testified that, in his opinion, Rodgers was fit for trial and sentencing. Dr. Rossiter's interviews and review of records indicated that it was "questionable" whether Rodgers suffered from a diagnosable mental disorder at the time of trial in January 1992. Although Rodgers was diagnosed with an adjustment disorder when initially incarcerated in August 1991, tranquilizers and anti-depressants remitted symptoms of the disorder by October 1991. Rodgers described himself to Dr. Rossiter as having been very emotionally upset, unable to concentrate and focus, unable to comprehend what was going on in his life, mistaking dreams for reality, mistaking reality for dreams, and having suffered from frequent crying spells during his incarceration in the DuPage County Jail. Dr. Rossiter testified that he believed Rodgers was exaggerating his symptoms to convince Dr. Rossiter that he was in great mental distress and was incapable of cooperating with his attorneys or understanding what was going on in the legal proceedings against him.

Dr. Schwarz, Rodgers' expert witness, countered that, in his opinion, Rodgers was unfit for trial and sentencing.[4] However, Dr. Schwarz admitted that Rodgers appeared to understand the nature and purpose of the proceeding against him on a cognitive level. Furthermore, Dr. Schwarz testified that it appeared as if Rodgers was able to testify rationally during trial and converse with his attorneys. Dr.

---

[4]Even if Dr. Schwarz's testimony were viewed as totally contrary to that of Dr. Rossiter, the credibility and believability of "dueling experts" was a matter properly to be resolved in the state trial court.

Schwarz's testimony, along with that of the other witnesses testifying on Rodgers' behalf, did not sway the Circuit Court. Indeed, Rodgers conceded that he knew the role of the judge, prosecutors, defense counsel, jury, and witnesses at his trial. He was also aware of the nature of the charge against him, the possible penalties, and the defense strategy. Rodgers said that his emotional problems did not prevent him from testifying consistent with his attorneys' directions. Rodgers' trial attorneys, Ekl and Moreshi testified that they observed nothing in Rodgers' behavior indicating that he was unfit for trial, was unable to understand what was going on, or could not participate in his defense. The Circuit Court's conclusion that Rodgers was fit for trial and sentencing in 1992 is not unreasonable in light of the testimony presented at the retrospective fitness hearing. We therefore defer to the trial court's holding, and find that Rodgers' due process rights were not violated.

## 2. *Ineffective Assistance of Counsel*

Rodgers argues that his trial counsel was constitutionally ineffective for their failure to request a fitness hearing to determine whether Rodgers was fit for trial and sentencing. Rodgers further contends that his appellate counsel was constitutionally ineffective for failing to raise the issue on direct appeal. To establish that he was deprived of effective assistance of counsel, Rodgers must make two showings. *See Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). First, Rodgers must demonstrate that his counsel's performance was deficient. *See id.* This "performance" prong requires Rodgers to show that his "counsel's representation fell below an objective standard of reasonableness." *Id.* 446 U.S. at 687-88, 104 S.Ct. at 2064. Our review of the performance of Rodgers' counsel is highly deferential. *Id.* 446 U.S. at 698, 104 S.Ct. at 2065.

Second, Rodgers must demonstrate that his counsel's deficient performance prejudiced his defense. *See id.* 466 U.S. at 687, 104 S.Ct. at 2064. This "prejudice" prong requires Rodgers to "show that there is a reasonable probability that, but for [his] counsel's unprofessional errors, the result of the

proceeding would have been different." *Id.* 466 U.S. at 694, 104 S.Ct. at 2068. We may presume

prejudice in some situations. *Id.* 466 U.S. at 692, 104 S.Ct. at 2067 (stating that prejudice is presumed

where counsel was constructively denied, where the state interfered with counsel's assistance, and where

counsel had a conflict of interest). Absent such a presumption, however, Rodgers "must affirmatively

prove prejudice." *Id.* 466 U.S. at 693, 104 S.Ct. at 2067. If Rodgers fails to establish one of the two

prongs, we may deny his petition without considering the other prong. *See Hough v. Anderson*, 272 F.3d

878, 890 (7th Cir. 2001).

We address the prejudice prong of the *Strickland* test first. Although Rodgers asks this Court

to presume prejudice in this case, he does not provide us with any United States Supreme Court case

applying the presumed prejudice standard where counsel failed to request a fitness hearing or where

counsel failed to raise the issue on direct appeal. Instead, he relies on *Roe v. Flores-Ortega*, 528 U.S.

470, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000). In *Flores-Ortega*, the Supreme Court applied the

presumed prejudice standard where the defendant's lawyer failed to file a notice of appeal pursuant to

the defendant's request. *See id.* 528 U.S. at 484, 120 S.Ct. at 1038-39. The Court emphasized that the

lawyer's failure to file the notice resulted in the defendant's forfeiture of a judicial proceeding. *See id.*

Rodgers contends that the failure of his trial counsel to request a fitness hearing before trial resulted in

his forfeiture of a judicial proceeding. We decline to extend the presumed prejudice standard set forth

in *Flores-Ortega* to the case at hand. Even if we were to equate the forfeiture of a pre-trial fitness

hearing with the forfeiture of a post-trial appeal, Rodgers did not experience the forfeiture of a fitness

hearing. In fact, the Circuit Court conducted a retrospective fitness hearing to determine if he was fit

for trial and sentencing in 1992.

Because the presumed prejudice standard does not apply, Rodgers must demonstrate actual

prejudice. A lawyer's failure to request a fitness hearing does not necessarily prejudice a defendant

10

merely because a fitness hearing was not held before trial. *See Eddmonds*, 93 F.3d at 1317. Indeed, the denial of a fitness hearing can be harmless. *See id.* In order to determine whether Rodgers was prejudiced by the failure of his trial counsel to request a fitness hearing or by his appellate counsel's failure to raise the issue on direct appeal, we must determine whether Rodgers was in fact unfit to stand trial. *See id.* As set forth above, Rodgers was fit for trial. Consequently, Rodgers' defense was not prejudiced by the failure of his trial counsel to request a fitness hearing prior to trial or by his appellate counsel's failure to raise the issue on direct appeal. Rodgers' ineffective assistance of counsel claims therefore fail.

## III.   CONCLUSION

For the foregoing reasons, Rodgers' petition for writ of habeas corpus is denied. It is so ordered.

MARVIN E. ASPEN
United States District Judge

Dated ___**6/6/03**___